NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRA J. GRANT,<br><br>                Plaintiff,<br><br>v.<br><br>UMDNJ-UCHC-RUTGERS UNIVERSITY,<br>and UMDNJ-UNIVERSITY<br>CORRECTIONAL HEALTHCARE,<br><br><br>                Defendants. | Case No. 16-cv-5164 (SDW) (LDW)<br><br><br>**OPINION**<br><br><br>February 21, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendant Rutgers, the State University of New Jersey's[1] ("Rutgers" or "Defendant") Motion for Summary Judgment, brought pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On February 15, 2011, Defendant hired Plaintiff Kra J. Grant ("Plaintiff") to work as a licensed practical nurse. At or around the time Plaintiff was hired, he received copies of

---

[1] Rutgers asserts that it has been improperly pled in this action as UMDNJ-UCHC-Rutgers University and UMDNJ-University Correctional Healthcare. As explained in its Notice of Removal, Rutgers assumed all legal obligations of the University of Medicine and Dentistry of New Jersey ("UMDNJ") and University Correctional Health Care ("UCHC") pursuant to the New Jersey Medical and Health Sciences Education Restructuring Act, N.J. Stat. Ann. §18A:64M-1 *et seq.* (ECF No. 1 at 2, n.1.) As such, for the purposes of this Opinion, this Court will refer to Rutgers, UMDNJ, and UCHC interchangeably.

Defendant's leave policy[2] and Attendance Control Policy ("ACP"). (Def.'s Statement of Material Facts ¶¶ 5, 9, ECF No. 31-1) [hereinafter Def.'s 56.1]. Under the ACP, lateness and unscheduled absences[3] are handled with the following four disciplinary steps:

(1)  Formal Counseling
(2)  Written Warning
(3)  Suspension of three (3) days without pay (or in case of 12 hour shifts two (2) days without pay) [sic] Exempt staff receive a written warning lieu [sic] of suspension since they cannot be suspended with loss of pay) [sic]
(4)  Termination

(Denner Decl., Ex. D at 2-3, No. 31-4.)

Plaintiff was formally counseled on March 15, 2012 for calling out of work six times between August 2011 and March 2012. (Denner Decl., Ex. Y.) On June 6, 2012, Plaintiff was issued a "Staff Disciplinary Notice" because he was late to work five times between April and May 2012. (Denner Decl., Ex. Z.)

Following additional absences, Human Resource Generalist Stephanie Plaskow ("Plaskow") advised Plaintiff in June and September of 2012 that he may be eligible for Medical/FMLA leave. (Denner Decl., Exs. F, H, J.) Plaskow instructed Plaintiff to complete and return certain forms within fifteen days so that human resources could determine whether his absences qualify as protected leave. (Denner Decl., Exs. F, J.) Plaintiff did not provide the requested documents, and as such, his absences were considered unscheduled for the purposes of Defendant's ACP. (Def.'s 56.1 ¶¶ 12-13, 17.)

---

[2] Defendant's policy states that it has defined "Medical/FMLA leaves of absence" in compliance with the provisions of the New Jersey Family Leave Act ("NJFLA") and the Family and Medical Leave Act ("FMLA"). (Denner Decl., Ex. B at 1.)

[3] "Unscheduled absences" are defined as "[a]ll instances when a staff member is scheduled to come to work and does not." (Denner Decl., Ex. D at 2.)

Plaintiff called out of work three more times in early October 2012 before notifying UCHC's Regional Nurse Manager Dolores Guida ("Guida") that he would be out indefinitely to care for his mother. (Def.'s 56.1 ¶¶ 23-24.) In a letter dated October 9, 2012, Plaskow again advised Plaintiff that he may be eligible for Medical/FMLA leave, and instructed him to submit the requisite forms. (Denner Decl., Ex. O.) Plaintiff submitted the necessary paperwork, and Defendant retroactively approved his family leave for the entire time period requested (*i.e.*, from September 2, 2012 through November 6, 2012). (Denner Decl., Exs. P-Q.)

Plaintiff's family leave ended on November 6, 2012, but he did not return to work until November 14, 2012. (Def.'s 56.1 ¶¶ 30, 34.) At Guida's request, Plaintiff provided a statement to explain his four unscheduled absences. (*Id.* ¶¶ 34, 38.) In his statement, Plaintiff advised that he had been recently diagnosed with diabetes; and he accused Guida of causing the condition. (Denner Decl., Ex. V.)

Plaintiff was not disciplined for his absences in November 2012. (Def.'s 56.1 ¶ 41.) However, on November 19, 2012, Plaintiff received a "Staff Disciplinary Notice" with a three-day suspension for the attendance violations he incurred prior to the commencement of his family leave. (Denner Decl., Ex. H.) Following eight more unscheduled absences between January and September 2013, Plaintiff's employment was terminated on September 12, 2013. (Denner Decl., Ex. W.)

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 11, 2013, alleging that he was terminated due to his "race (black), sex (male) and in retaliation in violation of Title VII of the Civil Rights Act of 1964." (Denner Decl., Ex. AA.) The EEOC found no probable cause to support Plaintiff's claim and issued a right to sue letter on December 6, 2013. (Def.'s 56.1 ¶ 58.) On or about May 16, 2014, Plaintiff asked the New Jersey Division on Civil Rights ("DCR") to determine whether the

EEOC's decision comported with the New Jersey Law Against Discrimination ("NJLAD"). (Denner Decl., Ex. BB.) On February 12, 2015, the DCR also found that there was no probable cause to support Plaintiff's allegations of race discrimination, sex discrimination, or retaliation under the NJLAD. (Denner Decl., Ex. CC.)

On August 31, 2015, Plaintiff filed suit against Defendant in the Superior Court of New Jersey, Union County, alleging that he had been terminated in violation of the NJFLA. (ECF No. 1-1.) On August 1, 2016, Plaintiff served an Amended Complaint, alleging breach of contract, and violations of NJFLA, NJLAD, and the Americans with Disabilities Act ("ADA"). (ECF No. 1-4.) Defendant removed the action to this Court on August 24, 2016. (ECF No. 1.) On September 9, 2016, Plaintiff moved to remand the case; and on November 2, 2016, this Court adopted Magistrate Judge Leda Dunn Wettre's Report and Recommendation, which denied Plaintiff's motion. (ECF Nos. 4, 8.) Following a period of discovery, Defendant filed the instant Motion for Summary Judgment on November 13, 2017.[4] (ECF No. 31.) Plaintiff filed opposition briefs on December 11, 2017 and December 18, 2017.[5] (ECF Nos. 36, 37.) Defendant replied on January 12, 2018. (ECF No. 40.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

---

[4] After Defendant filed its motion, Plaintiff cross-moved to compel further discovery responses. (ECF No. 32.) The cross-motion was terminated as moot on December 8, 2017 because Defendant voluntarily answered Plaintiff's request for admissions. (ECF No. 35.)

[5] Neither of Plaintiff's briefs disputed Defendant's Statement of Material Facts. (ECF Nos. 36, 37.) Local Civil Rule 56.1 instructs the opponent of a motion for summary judgment to "furnish, with its opposition papers, a responsive statement of material facts," and advises that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *See* L. Civ. R. 56.1.

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving

5

party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

## III.    DISCUSSION

### a.    Americans with Disabilities Act (ADA)

The ADA requires a plaintiff to exhaust his administrative remedies by filing a charge with the EEOC before bringing a civil action in court. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); *see also Phillips v. Sheraton Soc'y Hill*, 163 F. App'x 93, 94 (3d Cir. 2005). Courts have held that "the parameters of the civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)).

Plaintiff alleges that he was denied a reasonable accommodation under the ADA. However, he did not raise this claim with the EEOC in his "Charge of Discrimination." (Denner Decl., Ex. AA.) As such, the EEOC did not have an opportunity to investigate these allegations, and Plaintiff did not exhaust his administrative remedies. *See, e.g.*, *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 850-51 (3d Cir. 2016) (finding administrative remedies were not exhausted because there was no "basis from which the EEOC could be on notice of [the plaintiff's] intent to bring a disability discrimination charge"). Therefore, summary judgment will be granted as to Plaintiff's ADA claim.

6

**b. New Jersey Law Against Discrimination (NJLAD)**

The NJLAD prohibits "unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5-4.1. Although Plaintiff does not specify his disability in his Amended Complaint, he does mention being "newly diagnosed with Diabetes type 2." (Am. Compl. at ¶ 1, ECF No. 1-4.) As such, this Court construes his NJLAD claim to include causes of action for disability discrimination and failure to accommodate as it relates to his diabetes.[6]

*i. Disability Discrimination*

Employment discrimination claims are evaluated through the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations and quotation marks omitted); *see also Viscik v. Fowler Equip. Corp.*, 800 A.2d 826, 833 (N.J. 2002) (explaining that New Jersey courts have adopted the *McDonnell Douglas* framework to prove disparate treatment under the NJLAD).

---

[6] To the extent that Plaintiff intends to litigate race discrimination, sex discrimination, and retaliation claims under NJLAD, those claims are barred because they were already addressed in the DCR's February 12, 2015 determination letter. (*See* Denner Decl., Ex. CC); *see also* N.J. Stat. Ann. § 10:5-27 (a final determination "shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned"); N.J. Stat. Ann. § 10:5-21 ("Any person aggrieved by a final order of the director may take an appeal therefrom to the Superior Court, Appellate Division as an appeal from a State administrative agency."); *Harter v. GAF Corp.*, 150 F.R.D. 502, 513 (D.N.J. 1993).

Assuming *arguendo* that Plaintiff could establish his *prima facie* case of disability discrimination based on his diabetes,[7] Defendant has met its burden of providing a legitimate, nondiscriminatory reason for terminating Plaintiff, *i.e.*, that it fired him for his chronic attendance violations. Specifically, Defendant demonstrated that pursuant to its four-step ACP, Plaintiff was: (1) formally counseled on March 15, 2012; (2) issued a "Staff Disciplinary Notice" on June 6, 2012; (3) given another "Staff Disciplinary Notice" on November 19, 2012 and suspended for three days; and (4) subsequently terminated. Thus, to avoid summary judgment, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations and quotation marks omitted); *see also Stouch v. Twp. of Irvington*, 354 F. App'x 660, 666-67 (3d Cir. 2009). Plaintiff's speculative explanations as to why he was fired are not supported by the record. Therefore, Defendant is entitled to summary judgment as to Plaintiff's NJLAD disability discrimination claim.

### ii. *Failure to Accommodate*

Though the NJLAD does not explicitly address reasonable accommodations, New Jersey courts have acknowledged that "[a]ffording persons with disabilities reasonable accommodation rights is consistent with the [statute's] broad remedial purposes." *See Victor v. State*, 4 A.3d 126, 143 (N.J. 2010); *see also Tynan v. Vicinage 13 of Superior Court*, 798 A.2d 648, 654-55 (N.J. Super. Ct. App. Div. 2002). To prevail on his failure to accommodate claim, Plaintiff must

---

[7] Plaintiff has the initial burden of showing, by a preponderance of the evidence, that he "(1) belongs to a protected class; (2) applied for or held a position for which he . . . was objectively qualified; (3) . . . was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person." *Viscik*, 800 A.2d at 833.

establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006). "New Jersey law places the duty on the employee to initiate a request for an accommodation." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 238 (D.N.J. 2015). "While there are no magic words to seek an accommodation, the employee, however, 'must make clear that . . . assistance [is desired] for his . . . disability." *Tynan*, 798 A.2d at 656-57 (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)).

Here, even assuming that Plaintiff could demonstrate that his diabetes is a disability under NJLAD and that Defendant was aware of his condition, there is nothing in the record to suggest that Plaintiff requested an accommodation or assistance for it. Additionally, there is no evidence to support Plaintiff's allegation that Defendant refused to give him additional time off. (ECF No. 37 at 2.) Rather, Defendant has demonstrated that it neither reprimanded nor penalized Plaintiff for taking unscheduled days off on November 7, 8, 9 and 12, 2012. (Def.'s 56.1 ¶¶ 32-34, 41.) Moreover, Plaintiff states in his own opposition brief that after he returned to work in November 2012, he did not request an extension of family medical leave or temporary disability leave. (ECF No. 37 at 11.) Therefore, Defendant is entitled to summary judgment as to Plaintiff's claim for failure to accommodate under the NJLAD.

### c. New Jersey Family Leave Act (NJFLA)

The NJFLA allows eligible employees to take "leave of 12 weeks in any 24-month period upon advance notice to the employer" to care for a family member's serious health condition. N.J. Stat. Ann. § 34:11B-4; *see Hall-Dingle v. Geodis Wilson USA, Inc.*, No. 15-1868, 2017 WL 899906, at *4 (D.N.J. Mar. 7, 2017). Plaintiff's Amended Complaint does not specify the manner

9

in which Defendant allegedly violated the NJFLA. However, in light of Plaintiff's *pro se* status, this Court will address his potential causes of action for interference and retaliation.[8]

### i. *Interference*

An employer may not "interfere with, restrain or deny the exercise of, or the attempt to exercise, the rights provided under [the] act or . . . withhold the benefits provided for under [the] act." N.J. Stat. Ann. § 34:11B-9(a). To bring an interference claim under the NJFLA, Plaintiff "must show that [he] was entitled to benefits and denied those benefits." *Hall-Dingle*, 2017 WL 899906, at *4. In this matter, an interference claim is not viable because Plaintiff has not shown that Defendant withheld NJFLA benefits. *See Tarrant v. Hamilton Twp. Sch. Dist.*, No. 16-7058, 2017 WL 3023211, at *6-7 (D.N.J. July 14, 2017). To the contrary, Defendant has established that it retroactively approved all of the time Plaintiff requested to care for his mother. (Def.'s 56.1 ¶¶ 26, 29-30.) Thus, Defendant is entitled to summary judgment as to Plaintiff's interference claim.

### ii. *Retaliation*

Employees who have exercised their right to take family leave are protected from suffering retaliatory action. N.J. Stat. Ann. § 34:11B-9; *see Wolpert v. Abbott Labs.*, 817 F. Supp. 2d 424, 439-40 (D.N.J. 2011). In analyzing retaliation claims under the NJFLA, courts use the same *McDonnell Douglas* burden-shifting framework that applies to employment discrimination claims. *Hall-Dingle*, 2017 WL 899906, at *7; *Wolpert*, 817 F. Supp. 2d at 439.

To establish his *prima facie* case of unlawful retaliation, Plaintiff must show that he: (1) invoked his right to leave under the NJFLA; (2) he suffered an adverse employment action; and

---

[8] The NJFLA "only applies to employees who take leave to care for a family member, not employees on leave for their own injuries." *Bell v. KA Indus. Servs.*, *LLC*, 567 F. Supp. 2d 701, 709 (D.N.J. 2008). Thus, Plaintiff's NJFLA claim cannot be based on leave he allegedly requested for his own medical condition, such as his diabetes.

(3) the adverse action was causally related to his exercise of his rights under the NJFLA. *See Hall-Dingle*, 2017 WL 899906, at *7; *Dieng v. Comput. Sci. Corp.*, No. 14-5381, 2016 WL 885389, at *10 (D.N.J. Mar. 8, 2016). Here, there is nothing in the record to suggest that Plaintiff was terminated for taking family leave. Defendant has produced documents to show that it retroactively approved Plaintiff's family leave from September 2, 2012 through November 6, 2012. (Def.'s 56.1 ¶ 30.) Furthermore, Plaintiff was not penalized for the additional unscheduled absences he accrued in November 2012, beyond his approved leave. (*Id.* ¶ 41.) Thus, Plaintiff is unable to establish his *prima facie* case for retaliation.

As discussed in this Court's analysis of Plaintiff's NJLAD claim, even if Plaintiff could establish his *prima facie* case, Defendant has provided "a legitimate, nondiscriminatory reason for its employment action." *See Hall-Dingle*, 2017 WL 899906, at *9. Plaintiff has not offered direct or circumstantial evidence to demonstrate that the articulated reason is pretextual. *Id.* Thus, Defendant is entitled to summary judgment as to Plaintiff's NJFLA retaliation claim.

### d. **Family & Medical Leave Act (FMLA)**[9]

"[C]ourts apply the same standards and framework to claims under the FMLA and the NJFLA." *Wolpert*, 817 F. Supp. 2d at 437. For example, as with the NJFLA, to assert a viable interference claim under the FMLA, a plaintiff must show benefits were "actually withheld." *Ross v. Gilhuly*, 755 F.3d 185 (3d Cir. 2014). Additionally, where there is "insufficient evidence for a reasonable factfinder to conclude that [a defendant's] legitimate, nondiscriminatory explanation for terminating [a plaintiff's] employment was a pretext," a retaliation claim under the FMLA cannot withstand summary judgment. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155-56 (3d

---

[9] Plaintiff alleges violations of the FMLA for the first time in his opposition brief. Because the causes of action are based on the same facts as Plaintiff's NJFLA claims, and in consideration of his *pro se* status, this Court will briefly address Plaintiff's FMLA claims.

Cir. 2017). As such, Plaintiff's FMLA claims will be dismissed for the same reasons his NJFLA claims could not survive summary judgment.

### e. **Breach of Contract**

Under New Jersey law, to state a claim for breach of contract, Plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Because Plaintiff does not allege that he entered into an employment contract, it is presumed that he was an at-will employee. *See Tripodi v. Johnson & Johnson*, 877 F. Supp. 233, 237 (D.N.J. 1995) ("It is the New Jersey rule that when employment is for an indefinite term, employment at will is the prevailing rule."). This Court acknowledges that "[i]n certain circumstances, a company's employment manual contractually can bind the company notwithstanding its inclusion of a disclaimer of a creation of enforceable rights." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 308 (3d Cir. 2004), *cert. denied*, 543 U.S. 814 (2004) (citing *Geldreich v. Am. Cyanamid Co.*, 691 A.2d 423, 426-28 (N.J. Super. Ct. App. Div. 1997)). Here, Plaintiff alleges in his opposition brief that he was terminated in violation of Defendant's ACP. (ECF No. 37 at 8.) However, Defendant has shown that it followed its ACP in handling Plaintiff's attendance issues; and Plaintiff has not raised a genuine issue of material fact to suggest otherwise.[10] Thus, Defendant is entitled to summary judgment as to Plaintiff's breach of contract claim.

---

[10] Furthermore, there is nothing in the record to support Plaintiff's assertions that he was allowed to work close to home as part of the terms of his employment and that he was entitled to a pre-termination hearing before being discharged. (ECF No. 37 at 8, 14.)

**IV.     CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is

**GRANTED**.  An appropriate Order follows.

s/ <i>Susan D. Wigenton</i>_____
<br>**SUSAN D. WIGENTON**
<br>**UNITED STATES DISTRICT JUDGE**

Orig:          Clerk
cc:            Hon. Leda D. Wettre U.S.M.J.
               Parties